

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| BEVIS WHITE and GEORGIA WHITE,<br>Plaintiffs,<br><br>vs.<br><br>HOLIDAY KAMPER & BOATS,<br>FLEETWOOD ENTERPRISES, INC., and<br>BANK OF THE WEST,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 7:06-02362-HFF |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

### I.     INTRODUCTION

This is a breach of warranty action. Pending before the Court is Defendants' motion for partial summary judgment as to the following issues: (1) breach of implied warranty of fitness for particular purpose as to all Defendants, (2) revocation of acceptance as to all Defendants, (3) the common law tort claim of negligence and/or negligent misrepresentation as to all Defendants, and (4) violations of the Magnuson-Moss Warranty Act (the Act) as to Defendant Fleetwood Motor Homes of Indiana, Inc. (Defendant Fleetwood). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of this Court that Defendants' motion for partial summary judgment be granted as to Plaintiff's claims of (1) breach of implied warranty of fitness for particular purpose as to all Defendants; (2) revocation of acceptance as to all Defendants; and

(3) the common law tort claim of negligence and/or negligent misrepresentation as to all Defendants, and denied as to Plaintiff's claims of violations of the Act.

## II.     FACTUAL AND PROCEDURAL HISTORY

The Court will construe the facts in the light most favorable to Plaintiffs.

Plaintiffs, who live outside of Knoxville, Tennessee, purchased a 2005 Fleetwood Revolution RV from Defendant Holiday Kamper & Boats (Defendant Holiday Kamper) on May 19, 2005, for the purchase price of $226,506.00. Defendant Bank of the West (Defendant Bank) is the assignee of the retail installment sales contract originated by Defendant Holiday Kamper. Defendant Fleetwood is the manufacturer of the RV and provided a written warranty for Plaintiffs' RV.

At the time of purchase, the mileage of the RV was 1,500 miles. Upon delivery, Plaintiffs experienced continuing problems with the RV. Over the next year, Plaintiffs made repeated attempts to repair the various defects, but contend that certain problems have not been resolved. In addition, Plaintiff Bevis White telephoned Defendant Fleetwood to alert them to the defects with the RV. On three separate occasions, Bevis White spoke with a Defendant Fleetwood representative and on all three occasions he did not receive the requested assistance.

On April 13, 2006, Plaintiffs took the RV to Defendant Holiday Kamper for its last known repair. Technicians noted that the RV had been driven approximately 5,950 miles. During repair, Plaintiffs state that they verbally communicated their desire for revocation of sale to Defendant Holiday Kamper. Specifically, Plaintiffs maintain that they told Defendant Holiday Kamper's management that they wanted a refund. In addition, on May 1, 2006, Plaintiffs' counsel mailed Defendant Fleetwood written notice concerning Plaintiff's alleged revocation, Defendants' continuing breach of warranty and their failure to repair. Plaintiffs' counsel mailed the notice to the

address provided by Defendant Fleetwood in the warranty booklet that accompanies each RV. Although the RV was still under warranty, neither Defendant Fleetwood nor Defendant Holiday Kamper responded.

Plaintiffs subsequently filed suit against Defendants on June 28, 2006. Defendants removed the action to this Court on August 24, 2006.

In December 2007, the mileage of the RV was an estimated 11,000 miles, approximately 5,000 miles more than on April 13, 2006, the date Plaintiffs allegedly demanded revocation of acceptance. Since the purported revocation, Plaintiffs have lived in the RV for a period of time between selling and purchasing a new home in Tennessee, taken five or six trips to their daughter's home in Atlanta, Georgia, and driven to Jacksonville, Florida for a three-week trip. Further, since the beginning of the case at bar, Plaintiffs have taken a trip to Jacksonville, Florida, and then back through Atlanta, Georgia, that, in whole, lasted over one month.

## III.   STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322-23.  Hence, the granting of summary judgment involves a three-tier analysis.  First, the Court determines whether a genuine issue actually exists so as to necessitate a trial.  Fed. R. Civ. P. 56(e).  An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Second, the Court must ascertain whether that genuine issue pertains to material facts.  Fed. R. Civ. P. 56(e).  The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit.  *Anderson*, 477 U.S. at 248.  Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law.  Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327.  The primary issue is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law.  *Anderson*, 477 U.S. at 251-52. The substantive law of the case identifies which facts are material.  *Id*. at 248. Only disputed

4

facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

## IV.     CONTENTIONS OF THE PARTIES

Defendants argue that: (A) Because Plaintiffs had no "peculiar" purpose for the RV, Plaintiff's have no cause of action for breach of implied warranty fo fitness for a particular purpose; (B) Plaintiffs' continued use of RV after the date of revocation bars Plaintiffs' claim for revocation of acceptance; (C) The economic loss rule mandates the dismissal of Plaintiffs' common law tort claim for negligence and/or negligent misrepresentation; and (D) Pursuant to the Act, Defendant Fleetwood was not given reasonable opportunity to cure their failure to comply with the warranty.

With the exception of Defendants' breach of implied warranty argument, Plaintiffs dispute each of these assertions.

## V.     DISCUSSION AND ANALYSIS

### A.     *Breach of the implied warranty of fitness for particular purpose*

Plaintiffs have withdrawn their breach of the implied warranty of fitness for particular purpose claim. Therefore, the Court will grant judgment to Defendants on this issue.

### B.     *Revocation of acceptance*

"Revocation of acceptance . . . requires return of goods and cancellation of terms of contract." *Herring v. Home Depot, Inc.*, 350 S.C. 373, 379-80, 565 S.E.2d 773, 776 (S.C. Ct. App. 2002). Therefore "[a] buyer who purports to revoke his acceptance of goods may be found to have re-accepted them if, after such revocation, he performs acts which are inconsistent with the seller's ownership of the goods." *Griffith v. Stovall Tire, Inc.*, 329 S.E.2d 234, 236 (G.A. Ct. App. 1985); *Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72, 75 (2d Cir. 1986) ("[t]he continued

5

use of goods is inconsistent with the seller's ownership"). Moreover, under the Uniform Commercial Code (UCC) of Illinois, "continued use of goods after acceptance has purportedly been revoked is inconsistent with, and invalidates, supposed revocation unless such use was necessary to avoid substantial hardship." *L.S. Heath & Son, Inc. v. AT & T Info. Systems, Inc.*, 9 F.3d 561, 568 (7th Cir.1993); *see also Computerized Radiological Servs.*, 786 F.2d at 75.

Nevertheless, although it is generally true that a buyer revoking goods must discontinue her use, "continued use of non-conforming goods does not, in all cases, waive the revocation of acceptance." *Deere & Co. v. Johnson*, 271 F.3d 613, 619 (5th Cir. 2001) (applying the Mississippi UCC). As the Fourth Circuit noted, "[p]ost-revocation use will not invariably cancel revocation. The issue is determined on a case by case basis, with the reasonableness of post-revocation use being the underlying consideration, taken in conjunction with a consideration of all the other elements necessary to effect a justifiable revocation." *Bellsouth Telesensor v. Information Systems & Networks Corp.*, 1995 WL 520978 at *6 (4th Cir. 1995) (holding a "de minimus" use of revoked goods did not invalidate revocation of entire batch).

The case, *Monticello v. Winnebago Industries, Inc.*, 369 F. Supp. 2d 1350 (N.D. Ga. 2005), is factually similar to the instant lawsuit. In that action, the court held that the buyer of a recreational vehicle did not validly revoke acceptance when he continued to use the vehicle, and took it on vacation, after his attorney sent a revocation letter. *Id.* at 1362. "[A]fter giving notice of revocation, the buyer holds the goods as bailee for the seller. The buyer cannot continue to use them as his own and still have the benefit of rescission; his continued use becomes wrongful against the seller." *Gasque v. Mooers Motor Car Co., Inc.*, 313 S.E.2d 384, 389 (Va. 1984); *Jenkins v. General Motors Corp.*, 524 S.E.2d 324 (G.A. Ct. App. 1999) (holding that the use of a truck after the buyer

attempts to revoke its acceptance reinstates the acceptance); *but see Portillo v. Georgie Boy Mfg.*, 2005 WL 2787211, \*3 (N.D. Ill. 2005) (refusing to grant summary judgment to the defendants when it could not be clearly established that the plaintiff traveled in his RV after the date of revocation).

Defendants argue that Plaintiffs' post-revocation conduct, namely Plaintiffs' continued use of the RV after their alleged revocation, constituted re-acceptance for purposes of revocation. Plaintiffs, on the other hand, argue that although they continued to use the RV, this use was reasonable and that the they "have done nothing to cause any further deterioration of the unit." (Pls.' Resp. at 4.) In addition, Plaintiffs' counsel alleges that part of the trips were "related to medical visits." (Pls.' Resp. at 4.) Although continued use of the RV for medical visits might qualify as substantial hardship for revocation purposes, except for Plaintiffs' counsel's bare assertion, there is no competent evidence in the record establishing the use of the RV for medical visits.

From its review of the record, the Court finds that Plaintiffs actions in the instant case are inconsistent with the revocation requirement of "cancelling the terms of the contract." *Herring*, 350 S.C. at 379-80, 565 S.E.2d at 776. After revocation, Plaintiffs continued to use the RV for trips of a personal nature. Plaintiffs added approximately 5,000 miles to the RV after the date of revocation, almost three-times the miles as in *Monticello*. The only factual difference between this case and *Monticello* is, after revocation of acceptance, the plaintiffs in *Monticello* used the warranty for additional repairs.

Here, the five or six trips from Tennessee to Georgia and Florida are enough to effectuate "re-acceptance." *See Griffith*, 329 S.E.2d at 236. That is, Plaintiffs clearly exercised dominion over the RV after the date of revocation. Since revocation is a "cancellation of terms of contract,"

*Herring*, 350 S.C. at 379-80, 565 S.E.2d at 776, Plaintiffs continued use of the RV was "inconsistent with [Defendants] ownership." *See Griffith*, 329 S.E.2d at 236. Therefore, the Court will grant summary judgment to Defendants on this issue.

  *C.*  *The economic loss rule*

As a general rule, a claim arising out of the provisions of a contract must find remedy under contract law. *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 54-55, 463 S.E.2d 85, 88 (1995).

> Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic' losses. Conversely, where a purchaser buys a product which is defective and physically harms him, his remedy is in either tort or contract.

*Kennedy v. Columbia Lumber and Mfg. Co., Inc.*, 299 S.C. 335, 345, 384 S.E.2d 730, 736 (1989). *See also Bishop Logging Co. v. John Deere Indus. Equipment Co.*, 317 S.C. 520, 529, 455 S.E.2d 183, 188 (S.C. Ct. App. 1995) (holding that negligent misrepresentation is unavailable to a buyer as a theory to recover for losses that occurred from product's failure to live up to buyer's expectations).

The Court of Appeals for the Fourth Circuit has addressed the economic loss rule under South Carolina law. In *Palmetto Linen Services, Inc. v. U.N.X., Inc.*, 205 F.3d 126 (4th Cir. 2000), the court noted that the economic loss rule bars a negligence action where the duties are created solely by contract. *Id.* at 129. The court held that, only when there exist a special relationship[*]

---

[*] For instance, South Carolina courts have permitted negligence actions to proceed against engineers and lawyers based on their professional duties to plaintiffs. *Palmetto Linen Services*, 205 F.3d at 126 (citing *Griffin*, 320 S.C. 49, 463 S.E.2d 85; *Lloyd v. Walters*, 276 S.C. 223, 277 S.E.2d 888 (1981)).

8

between the parties that is independent of the contract, does a duty of care exists that, when breached, will support a tort action. *Id.*

The Supreme Court of South Carolina, however, has recently modified the effect of the economic loss rule in this state. *See Colleton Prep. Acad. v. Hoover Univ. Inc.*, --- S.E.2d ---, 2007 WL 5433193 (S.C. 2008). In that matter, the court held that a plaintiff can recover purely economic losses in tort from a manufacturer, and the economic loss rule would not apply, if the manufacturer owed a duty of care to the plaintiff, if a breach of industry standards served as evidence of the breach of that duty, and if the breach of that duty was accompanied by a clear, serious and unreasonable risk of bodily injury or death. *Id.* at *4-*6. Nevertheless, Plaintiff has not maintained, and the Court has not found, that the *Colleton* case has any application here.

In sum, Plaintiffs' claim for breach of warranty is grounded in contract, not tort. Moreover, Plaintiffs have failed to show a "special relationship" with Defendants nor have they alleged any unreasonable risk of bodily injury or death. As such, the economic loss rule applies. Accordingly, the Court will grant Defendants motion for summary judgment on this issue.

    *D.*  *"Reasonable opportunity to cure" the "failure to comply" under the Act*

The Act, 15 U.S.C. § 2310, was enacted by Congress in response to the widespread misuse by merchants of express warranties and disclaimers. 15 U.S.C.A. § 2401. The Act "operates in conjunction with state law to regulate the warranting of consumer products." *Carlson v. General Motors Corp.*, 883 F.2d 287, 291 (4th Cir. 1989). "Congress intended the application of state law, except as expressly modified by [the Act], in . . . breach of warranty actions." *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir.1986) (stating that the Act was intended to supplement, not supplant, state law.) Therefore, inasmuch as the Act does not modify [South Carolina] law, the UCC

9

of South Carolina is the proper authority. *See Carlson*, 883 F.2d at 291-92 (applying S.C. Code Ann. § 36-2-101 in conjunction with the Act.)

The Act is aimed at written warranties and service contracts made in connection with the sale of "consumer products." 15 U.S.C. § 2301(1). Specifically, it provides that for a warrantor to meet the federal minimum standards for warranty, the warrantor must remedy the consumer product within a reasonable time and without charge. *Id.*

To bring a cause of action under the Act, the party in non-compliance with the contract must be notified and given a "reasonable opportunity to cure" the "failure to comply." 15 U.S.C. § 2310(e). The South Carolina UCC provides that "[a] person 'receives' a notice or notification when it is duly delivered in a form reasonable under the circumstances at the place of business through which the contract was made or at another location held out by that person as the place for receipt of such communications." S.C. Code Ann. § 36-1-201. Alternatively, "[a] person 'notifies' or 'gives' a notice or notification to another person by taking such steps as may be reasonably required to inform the other person in ordinary course, whether or not the other person actually comes to know of it." *Id.*

In this case, Plaintiff Bevis White maintains that he telephoned Defendant Fleetwood three times. Moreover, Plaintiffs' counsel mailed notice to the address given in the warranty booklet provided by Defendant Fleetwood. Defendant Fleetwood, however, contends that it never received notification. Nevertheless, Plaintiffs' duty to notify ends once they have "tak[en] such steps as may be reasonably required to inform" Defendant Fleetwood of their duty to comply with the warranty. *See* S.C. Code Ann. § 36-1-202(d).

Moreover, Plaintiffs waited from May 1, 2007, to June 28, 2007, (almost two months) before commencing this action in state court. During that two month period, Defendant Fleetwood, nor any of the other Defendants, contacted Plaintiffs in an attempt to comply with the extended warranty. Hence, inasmuch as Plaintiffs allowed Defendant Fleetwood a "reasonable opportunity to cure" their "failure to comply," *See* 15 U.S.C. § 2310(e), Plaintiffs' claim pursuant to the Act will survive Defendants' motion for summary judgment.

## VI.    CONCLUSION

Based on the foregoing discussion and analysis, it is the judgment of this Court that Defendants' motion for partial summary judgment is hereby **GRANTED** as to Plaintiff's claims of (1) breach of implied warranty of fitness for particular purpose as to all Defendants; (2) revocation of acceptance as to all Defendants; and (3) the common law tort claim of negligence and/or negligent misrepresentation as to all Defendants, and **DENIED** as to Plaintiff's claims of violations of the Act.

**IT IS SO ORDERED**.

Signed this 9th day of September, 2008, in Spartanburg, South Carolina.

s/ Henry F. Floyd<br>
HENRY F. FLOYD<br>
UNITED STATES DISTRICT JUDGE